O’BRIEN, J.
The object this suit is to obtain a enjoining and restraining the defendants, as executors of Thomas Garry, from attempting to rescind, annul, terminate, or modify the contract between plaintiffs, and the said Garry, and from liquidating, selling, disposing of, or interfering with, the business, or with its assets and effects, or with the control and management thereof by the plaintiffs, and from excluding them from the premises occupied by the business, or from its books and property, upon the grounds that, by the terms of the agreement, the decedent became bound not only to execute a written contract, which was actually signed, but also to make a will of such a nature• that the executors should have no power, as against these plaintiffs, under the circumstances now existing, to wind up the business, and to do the things which they are now attempting to do; and that, either through innocent mistake or through fraud, the will which the decedent promised to execute was not, as a matter of fact, made by him.
The two questions which naturally present themselves at the outset are to whether the understanding or agreement relied upon as to Garry’s making a will could be proved by parol evidence, and, if it could, whether such shows a binding agreement. In reading the contract between the plaintiffs and Garry, it will be noticed that it contains covenants executed by both parties, and embodies provisions which assume to provide not only for the contingency of death, but for nearly every other conceivable contingency as well. Notwithstanding that thus the contract appears on its face to be complete, plaintiffs claim the right to establish, by parol, an agreement contemporaneous with the execution of the written instrument, which the respondents insist is inconsistent with the latter, but which the appellants claim is a collateral' agreement, and therefore, as coming within the class of exceptions, is not a violation of the rule which excludes the admission of parol evidence to vary, contradict or control a written contract.
In Thomas v. Scutt, 127 N. Y. 133; 38 St. Rep. 692, which is the latest expression of the court of appeals on this subject, it-is said:
“It is a general rule that evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, cannot be received to contradict or vary its terms. This rule is not universal in its application, because the courts, in their efforts to prevent fraud and injustice, have laid1 down certain exceptions, which, although correct in principle, are sometimes so loosely applied in practice as to threaten the integrity of the rule itself. The real exceptions may be grouped into, two classes, the first of which includes those cases in. which pároli evidence has been received to show that that which purports to be a written contract is, in fact, no contract at all. * * * The second class embrace those cases which recognize a written *63 instrument as existing and valid, but regard it as incomplete, either obviously or at least possibly, and admit parol evidence not to contradict or vary, but to complete, the emive agreement, of which the writing was only a part. * * * Two things, however, are essential to bring a case within this class: First, the writing must not appear upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement, and designated to express the whole arrangement between the parties, for in such a case it is conclusively presumed to embrace the entire contract; second, the parol evidence must be consistent with, and not contradictory of, the written instrument.”'
Are the two things essential to bring a case within the exception allowed to the general rule present in the case at bar ? Is there anything to indicate upon inspection of the written agreement that it was not designed to express the entire understanding of the parties? And is the agreement thus supported by parol “consistent with, and not contradictory of, the written instrument ” ? We think it would be difficult to conclude, after reading the written contract, consisting of twenty-seven clauses, which apparently was designed to cover every possible contingency that could arise, that such an agreement was not on its face complete, and did not contain the entire agreement of the'parties. But assuming that we are justified in regarding the written contract as incomplete, and the parol agreement as collateral and supplemental, can it be said that it is consistent with the written agreement? The latter expressly deals with the rights, powers, and obligations of the testator’s executors with respect to the contractual relations then created by it; and the parol agreement must be regarded as relating to the same subject-matter, because its effect to destroy the very provisions of the written agreement which refer to the rights, powers, and obligations of the executors. It will thus be seen that both cover the same area. In each the subject was the powers of the executors of the testator to deal with the business with reference to which the contract was made, after his death. The written agreement gave to the executors the identical power to terminate the interest of the plaintiffs which was reserved by the testator to himself during his life. By the parol arrangement, as interpreted by the plaintiffs, the executors were to be precluded from exercising the right to terminate the contract so long as the plaintiffs conformed to its requirements. An agreement to make testamentary provisions prohibiting the defendants from interfering with the business is the equivalent of an agreement on the part of the testator that his executors should not exercise such right. Not only this, but the provisions evidence an intention upon Garry’s part that neither he nor his estate would be in any way legally obliged to perform any one act; and in this respect the plaintiffs were willing to take their chances. If, then, we give the force to the parol agreement claimed for it by the plaintiffs, it is not clearly inconsistent with, and does it not annul, the express provisions of the written contract ?
Without, however, deciding that the parol agreement is inconsistent with, and vyould tend to vary and contradict, the written *64 instrument, and assuming that equity would enforce a distinct and -definite agreement, and give relief regardless of the operations of Tules of law or statute, when the result of recognizing such rules would be, not the prevention, but the commission, of a fraud, we are brought to the second consideration, as to whether the parol agreement was such a binding and definite contract that, if in writing, it would be enforced. If we assume, then, that Garry agreed to make a codicil directing his executors “ that, if the plaintiffs conformed to the agreement, they were to continue, the business until the amount was paid, and the contract ful-j filled,” it will be noticed that there is an absence, not only of any-, thing to indicate what is meant by “conforming” to the agree-" ment, but there is no time fixed when the amount to which the testator was entitled is to be paid. While living, he had “ full power to determine at what time and in what manner ” his capital should be drawn; and so, under the written agreement, the executors have the same power. But the .parol agreement is silent as to the time and manner in which the money was to be paid; and thus the executors, if the plaintiffs are right, are under obligation to permit the business to continue for an indefinite and uncertain period of time. There is abundant authority for the proposition that equity will not undertake to enforce specifically a contract which is indefinite and uncertain in its character. Stanton v. Miller, 58 N. Y. 192; Shakespeare v. Markham, 72 id. 400; Crosdale v. Lanigan, 129 id. 604; 42 St. Rep. 350. The plaintiffs, seeing the force of this, have offered to stipulate against any injury flowing to the estate from the absence of any definite provisión on this subject. But this does not aid us in determining the question as to the plaintiffs’ right to relief, which must be predicated upon the agreement itself, though if, upon that, we could reach a conclusion favorable to the plaintiffs, it might be that equity would require that the relief should be accorded upon certain conditions which the court would undoubtedly have the right to impose. Our conclusion upon this branch of the case is that the parol contract is too indefinite to be enforced. But, if definite, is it binding'?
The written contract imposed no obligation on Garry or his estate prior to the withdrawal of his capital. It is conceded that •Garry had the right, at any time during his life, before his capital was withdrawn, arbitrarily to cancel the agreement, and to return to each of the plaintiffs his $4,000. He was the sole owner of the business until such withdrawal of capital. He could sell the business, and the purchaser could cancel the agreement. In fact, the written agreement permitted him to do as he chose with the property, so long as any part of his capital remained in the business. And, even after it had been withdrawn, he was to fix the terms of any partnership, and the interests of the partners. _ If into such an agreement we read the parol understanding relied upon by the plaintiffs, can it be said that there was any binding obligation created ? It is not claimed that, if so written in, the clauses relating to the right of Garry in his lifetime to annul and cancel the agreement at any time before his capital was withdrawn *65 would be in any way destroyed or impaired. Therefore, in respect to the agreement to make the codicil to his will, restricting the right of his executors, this was subject, as was every other provision of the agreement, to the arbitrary will and disposition of Garry. If, during his lifetime, he had canceled, the agreement, or had sold the business to another, then all the rights which the plaintiffs had under the agreement, including the provision for a codicil, would have fallen. If we are right in our reasoning, then it follows that he was at liberty at any time during life arbitrarily to change his mind in regard to making a codicil to his will, or' making any provision for the security of the plaintiffs after his death; and this power was not dependent upon his canceling the entire agreement, because, while any portion of his capital remained, he could annul any of its provisions. And that this was his understanding clearly appears, because he executed a codicil some time after, which, to a certain extent, complied with what plaintiffs claimed was the parol agreement, and later made a new will which had. no such clause as it is now insisted he should have included therein; and thus the evidence is afforded that he changed his mind on this subject. He was not required by the agreement to indicate in any way his change of mind, and he was therefore ;at liberty to notify them or not of such change.
It will thus be seen that we agree with the views of the learned trial justice that:
“ The plaintiffs concededly gave to the testator the absolute power to cancel during his lifetime. The trust which they reposed in his willingness to deal justly with them was fully as great as that which they would be expected to place in him if they placed a moral reliance upon his executing a favorable provision in his will. They were willing to trust him, at the same time, not to ■exercise unjustly the power to cancel and also to incorporate a provision in his will continuing the business. Both acts had to be performed in his lifetime. Both acts were left, not only to his ■sense of justice, but to his possible perception of the danger of ■continuing a business decreasing in value, or increasing in risk, in "times of financial distress; so that he might provide for himself or for his estate when he could no longer supervise it against the perils of the future. So considered, the whole transaction at the time of the signing of the instrument was consistent with the purposes and intentions of the parties ; and it is the most reasonable supposition that the plaintiffs relied upon his willingness to allow the business to continue after his death, if, in his judgment, it •should likely be safe to do so, rather chan, upon a legal obligation, to prevent after his death the doing of a thing which he might do in his life, and which legal obligation was nowhere incorporated into the lengthy and expressive instrument which contained the agreement of the parties.”
Apart, therefore,.from the question as to whether the oral agreement varied and was inconsistent with the written contract, and upon the grounds that such agreement is too indefinite to be on. *66 forced, and is not binding, we think the judgment should be affirmed, with costs.
VAN BRUNT, P. J., and WILLIAMS, J., concur.